IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

CHRISTOPHER F. FORD,           )
                               )
        Plaintiff,             )
                               )
vs.                            )   Case No. CIV-10-181-C
                               )
MICHAEL B. DONLEY, Secretary of )
the United States Dep't of the Air Force, )
                               )
        Defendant.             )

## MEMORANDUM OPINION AND ORDER

Plaintiff Christopher F. Ford ("Ford") brought suit against Defendant Michael B. Donley, Secretary of the United States Department of the Air Force, ("Secretary"), claiming race, national origin, and gender discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq., and 42 U.S.C. § 1981, seeking compensatory and punitive damages. Defendant filed the present Motion for Summary Judgment arguing that Plaintiff's claims fail as a matter of law.

### I. BACKGROUND

Plaintiff Ford, a black male, worked as a sheet metal mechanic for Defendant Tinker Air Force Base, where he claims he was subjected to a hostile work environment and discriminated against during his employment. In 2003, Plaintiff received a settlement for a claim with the U.S. Equal Employment Opportunity Commission ("EEOC") previously filed against Defendant, which he alleges also included promotion to the next WG-3806-11 ("WG-11") position. (Pl.'s Br., Dkt. No. 36, at 5.) Plaintiff was in fact promoted to a temporary WG-11 position, which he held for over a year without incident.

In November of 2007, Plaintiff, along with thirteen other candidates, applied for an opening as a sheet metal mechanic, a WG-11 position—all applicants were white, except Plaintiff. These applications were referred to the selecting official, Bobby Joe Burleson, a white male. While making this selection, Burleson used a matrix established by the Air Force which rates years of relevant experience among other factors. Plaintiff alleges that Burleson used this matrix in a subjective manner to effectuate his discriminatory intent. Specifically, Plaintiff claims that his experience for numerous years as a sheet metal mechanic was improperly evaluated.

Because Plaintiff felt he was the subject of discrimination during this process, he filed another EEO claim for failure to promote on April 15, 2008. (Def.'s Br., Dkt. No. 33 Ex. 1.) Thereafter, Plaintiff alleges that he was subjected to a hostile work environment due to his race, prior filings, and mental health for which he filed another EEO claim on May 12, 2009. (Id. Ex. 5.) Specifically, Plaintiff alleges that several co-workers walked through his workspace, bent over, and looked at him strangely. (Id. Ex. 5, at 4-5.) Plaintiff also asserts several incidents of harassment against a specific co-worker, Nate Calhoun, who Plaintiff alleges called him a "nigger" during an argument between the two on February 18, 2009. (Id. Ex. 5, at 6-8.) Plaintiff claims that the next day, his first-level supervisor, Kevin Yates, took no action against Calhoun, who continued to harass Plaintiff by changing the station on Plaintiff's radio, watching Plaintiff, and walking through Plaintiff's workspace. (Id.) Both men were sent to counseling as a result of this argument. Additionally, Plaintiff claims that he was denied overtime and his request for stress leave due to discrimination or reprisal.

Finally, in September of 2009, Plaintiff applied for medical retirement but was denied in March of 2010. (Id. Ex. 7.)

## II. STANDARD OF REVIEW

Summary judgment is proper if the moving party shows that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Under the summary judgment standard, a mere factual dispute will not preclude summary judgment; instead there must be a genuine issue of material fact." Cooperman v. David, 214 F.3d 1162, 1164 (10th Cir. 2000). The party seeking summary judgment bears the initial burden of demonstrating the basis for its motion, and identifying those portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,'" that demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (citation omitted). A fact is material if it affects the disposition of the substantive claim. Anderson v. Liberty Lobby, Inc., 477 U.S. 247 (1986). A court considering a summary judgment motion must view the evidence and draw all reasonable inferences therefrom in the light most favorable to the nonmoving party. Kendrick v. Penske Transp. Servs., Inc., 220 F.3d 1220, 1225 (10th Cir. 2000).

If a party does not sufficiently support its own asserted facts or address the other party's asserted fact, a court may allow "opportunity to properly support or address the fact . . . consider the fact undisputed for purposes of the motion . . . grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show

that the movant is entitled to it . . . or issue any other appropriate order." Fed. R. Civ. P. 56(e).

## III. DISCUSSION

### A. Exhaustion

Under Title VII, a plaintiff must exhaust administrative remedies prior to initiating a discrimination suit. The pertinent regulation requires federal employee plaintiffs to initiate contact with an EEO counselor "within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action." 29 C.F.R. § 1614.105(a)(1). See Martinez v. Potter, 347 F.3d 1208, 1210-11 (10th Cir. 2003) (affirming dismissal of retaliation claim pursuant to Title VII for lack of jurisdiction based on failure to exhaust administrative remedies). The purpose of this requirement is to facilitate informal resolutions of discriminatory allegations with the counselor. If it is not resolved at this stage, however, the counselor must inform the employee of his right to file a discrimination complaint. 29 C.F.R. § 1614.105(d). Once a final action occurs, the employee has the right to appeal. Id. § 1614.106(e)(1).

A plaintiff must satisfy these requirements as to each discrete incident of alleged wrongful employment practice. Potter, 347 F.3d at 1210. Administrative exhaustion is a subject matter jurisdictional prerequisite to suing under Title VII, "not merely a condition precedent to suit." Shikles v. Sprint/United Mgmt. Co., 426 F.3d 1304, 1317 (10th Cir. 2005); Jones v. Runyon, 91 F.3d 1398, 1399 n.1 (10th Cir. 1996). "[B]ecause failure to exhaust administrative remedies is a bar to subject matter jurisdiction, the burden is on the

plaintiff as the party seeking federal jurisdiction to show, by competent evidence, that she did exhaust." McBride v. CITGO Petroleum Corp., 281 F.3d 1099, 1106 (10th Cir. 2002). Once it is shown that a plaintiff has filed the required charge, the issue of whether that charge was timely filed becomes an affirmative defense rather than a jurisdictional bar. Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393 (1982). Accordingly, when the issue is whether the plaintiff timely filed a charge with the EEOC, the burden is on the defendant to show that the charge was not filed timely.

Here, Plaintiff filed a charge of discrimination on April 15, 2008, and received a right to sue letter from the EEOC on December 14, 2009. On May 12, 2009, Plaintiff filed another charge of discrimination and received another right to sue letter from the EEOC on October 8. In the latter, Plaintiff alleged that multiple incidents in his workplace led to a hostile work environment where he was subjected to discrimination for his race, disability, namely his mental health, and reprisal for his prior EEO charges. As support for this charge, Plaintiff cited thirteen incidents he felt were discriminatory, which included denial of his requested stress leave, prohibition of overtime, and denial of his medical retirement package.

Defendant claims that Plaintiff has fully exhausted his administrative remedies regarding race and reprisal discrimination as the basis for his failure to promote claim and the thirteen allegations of hostile work environment from October 12, 2008, to September 2009. All other allegations, Defendant argues, were not raised in Plaintiff's EEO complaints and, therefore, this Court lacks the requisite subject matter jurisdiction to decide them.

Plaintiff counters that any failure to raise issues in the pleadings may nonetheless be tried by the parties' express or implied consent to do so under Rule 15 of the Federal Rules of Civil Procedure. Additionally, Plaintiff argues that the agency had ample time to fully investigate Plaintiff's claims, Defendant knew of Plaintiff's mental health issues, and that an interview of any supervisor or employee would have uncovered such knowledge. Citing Jones v. United Parcel Service, Inc., 502 F.3d 1176 (10th Cir. 2007), Plaintiff argues that because the agency likely uncovered information regarding Plaintiff's mental health issues, the exhaustive requirement is met. However, in Jones, the Tenth Circuit emphasized that the charge "must contain facts concerning the discriminatory and retaliatory actions underlying each claim." Id. at 1186.

Here, Plaintiff alleges discriminatory actions regarding his race and reprisal for previously filing EEO claims and a claim of hostile work environment based on his mental health, prior filings, and race. Plaintiff's claim of forced medical retirement is discussed in the later final agency decision as are Plaintiff's claims of disability discrimination and disparate treatment. Therefore, these issues are not beyond the scope of the administrative investigation. Accordingly, those claims discussed in the final agency decisions—such as Plaintiff's hostile work environment, reprisal, and failure to promote claims—satisfy the exhaustion requirement and will now be addressed.

### B. Plaintiff's Claims

When a plaintiff does not have direct evidence of discrimination, courts utilize the burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792

(1973). Under this framework, the plaintiff must first establish a prima facie case of unlawful discrimination. "The critical prima facie inquiry in all cases is whether the plaintiff has demonstrated that the adverse employment action occurred 'under circumstances which give rise to an inference of unlawful discrimination.'" Kendrick, 220 F.3d at 1227 (quoting Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253-54 (1981)); Adamson v. Multi Cmty. Diversified Servs., Inc., 514 F.3d 1136, 1146 (10th Cir. 2008) (describing the prima facie elements of discrimination as "neither rigid nor mechanistic"); Barone v. United Airlines, Inc., 355 F. App'x 169, 180 (10th Cir. 2009) ("We emphasize that the burden of establishing a prima facie case is 'not onerous.'").

Once the plaintiff has established the prima facie case, the burden shifts to the employer to establish legitimate, nondiscriminatory reasons for the action taken. If the employer satisfies this standard, then the burden shifts back to the plaintiff to prove by a preponderance of the evidence that the employer's reasons are a pretext for unlawful discrimination. Johnson v. Weld Cnty., Colo., 594 F.3d 1202, 1211 (10th Cir. 2010).

Pretext is established by showing "'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." Jones v. Okla. City Pub. Sch., 617 F.3d 1273, 1280 (10th Cir. 2010) (quoting Jaramillo v. Colo. Judicial Dep't, 427 F.3d 1303, 1308 (10th Cir. 2005)).

It is not the courts' role to determine whether an employer's decision was "'wise, fair or correct, but whether [it] honestly believed [the legitimate, nondiscriminatory] reasons [given] and acted in good faith upon those beliefs.'" Rivera v. City & Cnty. of Denver, 365 F.3d 912, 925 (10th Cir. 2004) (first alteration in original) (quoting Bullington v. United Air Lines, Inc., 186 F.3d 1301, 1318 (10th Cir. 1999), overruled on other grounds by Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002)).

### 1. Failure to Promote

To establish a prima facie case of discrimination resulting in a failure to promote, a plaintiff must show four elements: (1) that he was a member of a protected class; (2) that he sought and was qualified for a position; (3) that he did not receive the position; and (4) that the position remained open or was filled with a nonminority. MacKenzie v. City & Cnty. of Denver, 414 F.3d 1266, 1278 (10th Cir. 2005); Amro v. Boeing Co., 232 F.3d 790, 796-97 (10th Cir. 2000). The Court finds that Plaintiff has sufficiently established the prima facie case to carry forward with the burden-shifting analysis.

In rebuttal to this burden-shifting, Defendant points to the matrix used by the Air Force Department as evidence of the higher qualifications of the person selected compared to Plaintiff and the nondiscriminatory reason for not promoting Plaintiff. (Def.'s Br., Dkt. No. 33 Ex. 5.) Pursuant to this matrix, applicants are given points under various categories, such as workload experience, which are added up to a final score. (Id.) The person hired for this position, Joseph Harder, received a total of 47 points and was the applicant with the

8

highest score; Plaintiff received a total of 24.5 points and ranked eleventh among the fourteen applicants.

Plaintiff claims that he would have received higher points from application of the matrix had Burleson not subjectively used the matrix to prevent him from achieving the points he believed he was owed. Specifically, Plaintiff disputes the 2.5 years he received for "Workload Experience," which he believes should have been 10 points. Additionally, Plaintiff points to testimony of Kevin Yates, a supervisor, that Burleson improperly measured Plaintiff's experience under the matrix. Unfortunately, Plaintiff conflates two separate categories under the matrix: the "Workload Experience" and the "Experience in this Job Series."

"Workload Experience" measures the length of time an employee is in a specific shop, while "Experience in this Job Series" measures the length of time an employee is performing a specific function, such as welding or working with sheet metal. (Def.'s Br., Dkt. No. 42 Ex 3, at 42-43 & Ex. 6, at 44-46.) Plaintiff has 15 years' experience in the 3806 series, but only worked for one year in the boom shop, the shop where the opening arose. Therefore, Plaintiff received 2.5 points for his time spent in the boom shop under the heading "Workload Experience," which provides 2.5 points per year, and 7 points for his 15 years worth of experience as metal sheet mechanic under the heading "Experience in this Job Series," which provides 1 point per year up to 7 years.

9

Plaintiff's assertion that Burleson improperly allocated only 2.5 points to Plaintiff under the matrix for his 15 plus years of experience as sheet metal mechanic is incorrect.[*] Plaintiff's belief that his employer "got it wrong" is not enough "to suggest that something more nefarious might be at play." Johnson, 594 F.3d at 1211. To establish pretext, a plaintiff must produce evidence that the employer did more than get it wrong.

> [H]e . . . must come forward with evidence that the employer didn't really believe its proffered reasons for action and thus may have been pursuing a hidden discriminatory agenda. This is because Title VII licenses [courts] not to act as a "super personnel department" to undo bad employment decisions; instead, it charges [courts] to serve as a vital means for redressing discriminatory ones.

Id. Plaintiff has not established that he is uniquely disadvantaged by any procedural defects, if any, nor has he established an overwhelming disparity in qualifications between him and Harder. Jaramillo, 427 F.3d at 1309. This leaves the basis of Plaintiff's pretext argument as the subjectivity of Burleson's application of the matrix, which, even if accurate, is not enough to prove pretext. While it is true that courts view subjective evaluations with

---

[*] Specifically, Plaintiff cites to the deposition of Burleson as support for his assertion that his score under the matrix was improperly calculated. However, in his testimony, Burleson's understanding of the matrix and the difference between workload experience and experience in this job series is evidenced, as is Plaintiff's misunderstanding. (Pl.'s Br., Dkt. No. 36 Ex. 4, at 44 ("Q. And so if Mr. Ford testifies he spent more time than that, you're saying he only spent two and-a-half years in the boom shop? A. No, ma'am, that's 2.5 points, and if you look at the workload experience, 2.5 points per year. Q. So it would have been 15—so 15 years at two-and-a-half. So these other people had all been in the boom shop— A. No, I still don't think you understand me. Q. Okay. Yeah, I probably don't. A. He was temporarily promoted in the boom shop for one year. That 2.5 reflects one year in the boom shop workload experience.").) (See also id. Ex. 1, at 24 ("Q. Just to make it clear, you [Plaintiff] think you should have gotten a ten in workload experience? A. It should have been a ten. . . . Q. You agree with the "Experience in Job Series," you agree with the seven? A. Yeah. We both got seven's (sic) in that. Q. Do you have any idea why there had been two columns that say the same thing? A. I have no idea.").)

skepticism, "the existence of subjective criteria alone is not considered evidence of pretext." Riggs v. AirTran Airways, Inc., 497 F.3d 1108, 1120 (10th Cir. 2007); Plotke v. White, 405 F.3d 1092, 1106 (10th Cir. 2005). Construing all facts in favor of Plaintiff, he has neither sufficiently established pretext nor disputed material issues of fact to survive summary judgment. Accordingly, Defendant's Motion for Summary Judgment as to Plaintiff's failure to promote claim is granted.

## 2. Retaliation

To succeed in a Title VII retaliation claim against an employer, a plaintiff must show the following: "(1) the plaintiff engaged in protected opposition to discrimination; (2) the plaintiff suffered an adverse employment action; and (3) there is a causal connection between the protected activity and the adverse employment action." Petersen v. Utah Dep't of Corr., 301 F.3d 1182, 1188 (10th Cir. 2002) (internal brackets and quotation marks omitted).

Here, Plaintiff filed formal charges of discrimination under Title VII and, therefore, participated in a protected activity. Somoza v. Univ. of Denver, 513 F.3d 1206, 1213-14 (10th Cir. 2008). Plaintiff claims that in retaliation for previous filings, Bobby Burleson failed to promote him to a position for which he applied and was qualified. Failure to promote is an adverse employment action, so the pivotal issue is whether the two are sufficiently connected for the former to have caused the latter.

Defendant argues that Plaintiff's claim fails as a matter of law because the latest prior EEOC filings occurred in 2003 and the alleged discriminator had no knowledge of the prior filings. Plaintiff asserts that under the 2005 settlement of his 2003 EEO claim, Defendant

11

agreed to promote him to the next available WG-11position, which Defendant failed to do. The language of the agreement, however, requires no such advancement. While the agreement does provide that someone will "accompany[] Christopher Ford to the Tinker AFB personnel office to determine areas that can be improved to aid Mr. Ford in qualifying for future supervisory positions," it makes no promise to grant him such positions. (Def.'s Br., Dkt. No. 42 Ex. 7) (stating at the top that "[u]nless otherwise stated, the undersigned settle all disputes existing between them"). Accordingly, the Court finds no basis for Plaintiff's assertion that Defendant breached an agreement to promote him or that such a breach, without more, would satisfy Plaintiff's burden of establishing a causal connection.

Besides Plaintiff's assertion that Burleson knew of Plaintiff's prior EEO charges, Plaintiff has not shown how his failure to be promoted and these prior filings are connected. Plaintiff filed four charges during the years 2000 to 2003. The last charge was filed in 2003 and settled in 2005. While Burleson had knowledge of the prior charge, he had no involvement with the allegations or settlement. (Pl.'s Br., Dkt. No. 36 Ex. 4 at 14 (Burleson stating that "[he] thought [he] had heard that [Plaintiff] had filed a previous EEO complaint" but that he could not remember specifics regarding such complaint).) Besides this knowledge, Plaintiff points to no reason to connect the two events.

Plaintiff's protected activity is remote enough in time from the alleged adverse employment action that it fails by itself to establish a casual connection. Piercy v. Maketa, 480 F.3d 1192, 1198 (10th Cir. 2007) ("[I]f the only evidence of causation is a temporal relationship, then the adverse action must occur closely following the protected activity. For

12

example, an adverse employment action that happened more than three months after the protected activity was not entitled to a presumption of causation."). Therefore, Plaintiff has failed to show a causal connection between his protected activity and his failure to be promoted, and Defendant's Motion for Summary Judgment regarding Plaintiff's reprisal claim must be granted. See Peterson, 301 F.3d at 1191 (affirming district court's dismissal after finding "the record . . . replete with general claims of retaliation but no specifics.").

### 3. Hostile Work Environment Claim

"Although Title VII does not explicitly mention hostile work environment, a victim of a racially hostile work environment may nevertheless bring a cause of action under Title VII." Ford v. West, 222 F.3d 767, 775 (10th Cir. 2000). To demonstrate a racially hostile environment, "it must be shown that under the totality of the circumstances (1) the harassment was pervasive or severe enough to alter the terms, conditions, or privilege of employment, . . . and (2) the harassment was racial or stemmed from racial animus. General harassment if not racial or sexual [in nature] is not actionable." Bolden v. PRC Inc., 43 F.3d 545, 551 (10th Cir. 1994) (citing Meritor Sav. Bank, F.S.B. v. Vinson, 477 U.S. 57, 67 (1986)).

In connection with a claim of hostile work environment, "[s]everity and pervasiveness are evaluated according to the totality of the circumstances, considering such factors as 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" Robinson v. Cavalry Portfolio Servs., L.L.C., 365 F. App'x

104, 118 (10th Cir. 2010) (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993)). To demonstrate a hostile work environment, "[t]he plaintiff must show 'more than a few isolated incidents of racial enmity.' . . . Instead of sporadic racial slurs, there must be a steady barrage of opprobrious racial comments." Bolden, 43 F.3d at 550 (internal citations omitted).

To survive the present motion, Plaintiff "must . . . produce evidence from which a rational jury could infer that [he] was targeted for harassment because of [his] gender, race, or national origin." Sandoval v. City of Boulder, 388 F.3d 1312, 1327 (10th Cir. 2004). Recovery on a Title VII hostile work environment claim includes acts taken outside the statutory time period because "the entire hostile work environment encompasses a single unlawful employment practice." Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 117-18 (2002); Boyer v. Cordant Techs., Inc., 316 F.3d 1137, 1140 (10th Cir. 2003).

Here, Plaintiff asserts thirteen incidents as the basis for his hostile work environment claim: (1) from October 2008 to March 2009, co-workers walking through Plaintiff's work space, looking at him strangely, and bending over in front of him; (2) a co-worker elbowed him in the back in February of 2009; (3) Nate Calhoun, a co-worker, called Plaintiff a "nigger" and shoved his hand in Plaintiff's face on February 18, 2009; (4) the next day, Plaintiff's first-level supervisor, Kevin Yates, took no action against Calhoun, who was harassing Plaintiff; (5) on February 20, Plaintiff found Calhoun changing the station on his radio; (6) on February 25, Plaintiff was forced to go into counseling for his confrontations with Calhoun; (7) on March 5, Yates saw Calhoun walk through Plaintiff's work area, but failed to take action; (8) on four different occasions, Calhoun again walked through

14

Plaintiff's work area despite being told not to go near Plaintiff; (9) on March 11, Calhoun followed Plaintiff and watched him for over an hour as Plaintiff took a computer test; (10) on March 14, Calhoun followed Plaintiff and meanly stared at him for two hours; (11) on March 19, Defendant denied Plaintiff's request for stress leave; (12) in August, Defendant told Plaintiff he could no longer work weekends or overtime; and (13) in September, Plaintiff requested medical retirement, which was denied.

While Plaintiff claims that he sufficiently established a pervasive and severe environment, his testimony that all but two of the above instances had no impact on his working conditions tends to undercut this conclusion. Plaintiff's later objection to Defendant's citation of the relevant portions of Plaintiff's affidavit—where Plaintiff admits that these incidents had no effect on his working conditions—is not enough to counter the veracity of Plaintiff's statements, nor is it sufficient to create a dispute regarding these issues. Plaintiff did testify that the denial of his request for stress leave and elimination of his overtime did affect his working conditions, but does not put forth any evidence, other than his sentiment, that these actions were based on racial or discriminatory animus.

While the "'mere utterance of an . . . epithet which engenders offensive feelings in a [sic] employee' . . . does not sufficiently affect the conditions of employment to implicate Title VII," Harris, 510 U.S. at 21, "'the word "nigger" is pure anathema to African-Americans.'" Tademy v. Union Pac. Corp., 520 F.3d 1149, 1162 (10th Cir. 2008) (quoting Spriggs v. Diamond Auto Glass, 242 F.3d 179, 185 (4th Cir. 2001)). Plaintiff's confrontation with Calhoun, arising from an argument about a vacuum during which both Plaintiff and

Calhoun accuse the other of using this racial epithet, led both to receive counseling regarding workplace disagreements and use of such language. This incident was the sole verbal confrontation between the two and was isolated.

Plaintiff's allegations that co-workers walked through his space, which Defendant claims was communal, and bent over also is not sufficient to establish a pervasive and severe environment. Plaintiff admitted that these employees could be bending over to pick something up and that they may not have seen Plaintiff while doing it. Besides his belief that such actions were too many to be coincidental and were in fact motivated by his co-worker's animus towards him—due to his race, mental health, or prior EEO filings—Plaintiff has not asserted how such conduct is motivated by discriminatory or racial bias.

Additionally, Plaintiff points to no basis that Plaintiff's requested, but denied, overtime and stress leave was due to racial or discriminatory animus instead of the proffered reason that the backlog that afforded the overtime was eliminated. (Def.'s Br., Dkt. No. 33, at 26.) Defendant submitted evidence that the decision to deny Plaintiff's medical retirement did not involve the alleged discriminatory actors, which Plaintiff does not dispute. (Id. at 30.) Nor does Plaintiff provide any evidence that his superior, who had no knowledge of his prior filings, placed him in a separate room due to animus. (Pl.'s Br., Dkt. No. 36, at 19-20.) Finally, Plaintiff received counseling, as did the other participant, for engaging in a workplace disagreement, which Plaintiff agrees occurred. (Def.'s Br., Dkt. No. 33 Ex. 5, at 6-7.) Plaintiff relies exclusively on his presumptions that all of the complained-of activity

was based on either his race, his disability, or his prior filings, but cites no other facts as support.

While the Court does not doubt the sincerity with which Ford claims his workplace environment caused stress, anxiety, panic attacks, and the ancillary difficulties arising therefrom, the Court cannot find that he has sufficiently shown that under the totality of the circumstances the harassment was pervasive or severe enough to alter the terms, conditions, or privilege of employment and was racial or stemmed from racial or discriminatory animus. See Reinhardt v. Albuquerque Pub. Sch. Bd. of Educ., 595 F.3d 1126, 1131 (10th Cir. 2010) ("'Unsupported conclusory allegations do not create a genuine issue of fact.'" (quoting L & M Enters., Inc. v. BEI Sensors & Sys. Co., 231 F.3d 1284, 1287 (10th Cir. 2000))). Accordingly, Defendant is entitled to summary judgment regarding Plaintiff's hostile work environment claim.

## IV.  CONCLUSION

Even when viewing the evidence in a light most favorable to Plaintiff, the Court cannot find that Plaintiff has raised a genuine issue of material fact that Defendant's actions were motivated by unlawful discrimination or that the reasons proffered by Defendant for these actions were pretextual. See Branson v. Price River Coal Co., 853 F.2d 768, 772 (10th Cir. 1988) ("[P]laintiffs' mere conjecture that their employer's explanation is a pretext for intentional discrimination is an insufficient basis for denial of summary judgment.").

Accordingly, Defendant's Motion for Summary Judgment (Dkt. No. 33) is herein GRANTED, and a judgment shall enter. All other pending motions are stricken as moot.

IT IS SO ORDERED this 27th day of July, 2011.

*[signature]*

ROBIN J. CAUTHRON
United States District Judge